# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

**KARI L. CHIN and DEBORAH E. CHIN,
ALMA A. VEZQUEZ and YADIRA
ARENAS, CATHERINA M. PARETO
and KARLA P. ARGUELLO, and
EQUALITY FLORIDA INSTITUTE,
INC.,**

        **Plaintiffs,**

**v.**

**JOHN H. ARMSTRONG, in his
official capacity as Surgeon General
and Secretary of Health for the State
of Florida, and KENNETH JONES,
in his official capacity as State
Registrar,**

        **Defendants.**

**Case No. 4:15-cv-00399-RH-CAS**

---

## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs, Kari L. Chin, Deborah E. Chin, Alma A. Vazquez, Yadira Arenas, and Equality Florida Institute, Inc. ("Plaintiffs"),[1] move the Court for issuance of a preliminary injunction. In support of this motion, Plaintiffs state as follows:

1. Plaintiffs include two married female couples. One of the women in each couple gave birth to a child in the State of Florida while the couple was legally married.

---

[1] Additional plaintiffs Catherina A. Pareto and Karla P. Arguello do not move for a preliminary injunction at this time.

2. Plaintiff Equality Florida Institute, Inc. is an organization whose members include married same-sex couples in Florida in which one of the spouses has given birth or intends to give birth in Florida.

3. Under Florida law, if a married woman gives birth to a child, the Florida Department of Health's Office of Vital Statistics is required to issue a birth certificate that lists the birth mother's spouse as the child's other parent.  *See* Fla. Stat. § 382.013(2)(a) ("If the mother is married at the time of birth, the name of the husband shall be entered on the birth certificate as the father of the child, unless paternity has been determined otherwise by a court of competent jurisdiction.").

4. The Office of Vital Statistics routinely complies with Section 382.013(2)(a) when a woman who is married to a man gives birth to a child.  In such cases, when there is no court order finding someone other than the husband to be the child's second legal parent, the Office of Vital Statistics lists both the birth mother and her husband as parents on the child's birth certificate.

5. When a birth mother is married to another woman, however, the Office of Vital Statistics refuses to comply with Section 382.013(2)(a).  Instead of listing both the birth mother and her spouse on the birth certificate as the child's parent, as the statute requires, the Office of Vital Statistics issues a birth certificates that incorrectly indicates that the child has only one parent.

6. Defendants' refusal to recognize the marriages of same-sex couples on the same terms and conditions as the marriages of opposite-sex couples violates the rights of due process and equal protection guaranteed by the Fourteenth Amendment to the United States Constitution, as this Court held in *Brenner v. Scott*, 999 F. Supp. 2d 1278 (N.D.

Fla. 2014), and as the United State Supreme Court confirmed in in *Obergefell v. Hodges*, 135 S. Ct. 2584, 2605 (2015). Defendants' refusal to apply Section 382.013(2)(a) when a same-sex spouse gives birth to a child in Florida constitutes an unconstitutional refusal to recognize the marriages of same-sex couples under this binding precedent.

7. Defendants' refusal to apply Section 382.013(2)(a) equally to married same-sex couples substantially burdens Plaintiffs' fundamental right to marry and to have their marriages treated equally while advancing no legitimate state interest.

8. Plaintiffs are likely to succeed on the merits of their case and are suffering irreparable harm every day that Florida continues to violate the fundamental right recognized in *Obergefell* by refusing to apply Section 382.013(2)(a) equally to same-sex spouses who give birth in Florida. *See*, *e.g.*, *Brenner*, 999 F. Supp. 2d at 1291 ("the ongoing unconstitutional denial of a fundamental right almost always constitutes irreparable harm"); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (same); *Johnson v. Mortham*, 926 F. Supp. 1540, 1543 (N.D. Fla. 1996) ("Deprivation of a fundamental right, such as . . . Equal Protection . . , constitutes irreparable harm.").

9. Plaintiffs' likelihood of success on their constitutional claims weighs heavily in favor of issuance of a preliminary injunction. In addition, all other relevant factors weigh in favor of preliminary relief because: (a) Defendants' violation of Plaintiffs' fundamental right to marry is causing Plaintiffs irreparable harm, (b) there is no valid governmental interest in humiliating and stigmatizing Plaintiffs' families and treating Plaintiffs' marriages unequally, and (c) the public has a strong interest in protecting the

fundamental constitutional rights of all persons.  *See, e.g.*, *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1355 (11th Cir. 2005).

In support of this motion, Plaintiffs are contemporaneously filing the memorandum of law incorporated herein and the Declarations of Kari L. Chin ("K. Chin Decl."), Deborah E. Chin ("D. Chin Decl."), Alma A. Vazquez ("Vazquez Decl."), Yadira Arenas ("Arenas Decl."), and Equality Florida Institute, Inc. ("EQFL Institute Dec.").  Pursuant to Northern District of Florida Local Rule 7.1(B), Plaintiffs' counsel has conferred with the Defendants' counsel in a good faith effort to resolve by agreement the issues raised in this motion.  The parties were unable to resolve these issues, necessitating the instant motion.

For the reasons set forth above and in the accompanying filings, Plaintiffs move the Court for issuance of a preliminary injunction: (1) Declaring that Defendants' refusal to apply Section 382.013(2)(a) equally to same-sex spouses who give birth in Florida violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution; (2) enjoining Defendants, their agents, servants, employees, attorneys, and all persons in active concert and participation with Defendants from enforcing Florida's unconstitutional ban on marriage by same-sex couples by refusing to apply Section 382.013(2)(a), or any other statutes or regulations regarding birth certificates and marriage, equally to same-sex spouses who give birth to a child in Florida; and (3) requiring Defendants to issue corrected birth certificates listing both spouses as parents pursuant to Section 382.013(2)(a) to the Plaintiff couples and, upon request, to other married same-sex couples in which one of the spouses gave birth in Florida during their marriage and who were not provided with a birth certificate listing both parents as required by Section 382.013(2)(a), without charging such couples any fees that would otherwise apply to issuance of a corrected birth certificate.

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

### INTRODUCTION

In *Obergefell v. Hodges*, 135 S. Ct. 2584, 2601 (2015), the Supreme Court held that states violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment when they fail to recognize and give equal effect to a marriage between same-sex spouses with respect to *any* "aspect[] of marital status include[ing] . . . *birth . . . certificates*." *Id.* (emphasis added).  The Court also expressly held that its broad ruling—requiring the provision of all marital rights and responsibilities to same-sex couples—obviated the need for "slower, case-by-case determination of the required availability of specific public benefits to same-sex couples."  *Id.* at 2606. *Obergefell* has been in effect for over three months.  Furthermore, Defendants have been under an order from this Court to cease enforcement of Florida's marriage ban since the stay in *Brenner v. Scott* was lifted in January of this year—more than nine months ago.  *See Brenner v. Scott*, No. 14-14061, Order Denying Motion to Extend Stay of Preliminary Injunction Pending Appeal (11th Cir. Dec. 3, 2014) ("The stay of preliminary injunctions entered by the District Court expires at the end of the day on January 5, 2015.").  Yet Defendants continue to enforce aspects of Florida's unconstitutional marriage ban by refusing to apply Florida's law requiring the issuance of a birth certificate listing both spouses when a married woman gives birth to a child in Florida equally to same-sex spouses.

Defendants' refusal to recognize Plaintiffs' marriages and to treat them equally violates Plaintiffs' fundamental right to marry, causing Plaintiffs and their families irreparable harm. Defendants' refusal to respect Plaintiffs' marriages serves no legitimate state interest, much less the compelling interest that would be required to justify the infringement of a fundamental right. Plaintiffs therefore request a preliminary injunction enjoining Defendants' unconstitutional

4

conduct and requiring them to apply the marital protection established by Section 382.013(2)(a), as well as all other statutes and regulations addressing birth certificates and marriage, equally to same-sex spouses who give birth in Florida.

## FACTS

Each of the Plaintiff couples was lawfully married when one of the women gave birth in the state of Florida. *See* K. Chin Decl. ¶¶ 3, 4; D. Chin Decl. ¶¶ 3, 4; Vazquez Decl. ¶¶ 3,4; Arenas Decl. ¶¶ 3,4. They are all tax-paying citizens actively involved in their communities, and each couple has been in a committed relationship with one another for years. *See* K. Chin Decl. ¶ 3; D. Chin Decl. ¶ 3; Vazquez Decl. ¶ 3; Arenas Decl. ¶ 3. Each couple eagerly planned the expansion of their family and used an anonymous sperm donor to get pregnant. *See* K. Chin Decl. ¶4; D. Chin Decl. ¶ 4; Vazquez Decl. ¶ 4; Arenas Decl. ¶ 4. They each met every requirement for the issuance of a birth certificate listing both spouses as parents of their children, and accurately reflecting the fact of their marriage. *Id.* Yet, in each case, Defendants refused to list both spouses as parents on the child's birth certificate, although Defendants routinely do so when a child is born to a woman married to an opposite-sex spouse. *See* K. Chin Decl. ¶ 5; D. Chin Decl. ¶ 5; Vazquez Decl. ¶ 5; Arenas Decl. ¶ 5.

Plaintiffs Kari L. Chin and Deborah E. Chin have been in a committed relationship for fifteen years. *See* K. Chin Decl. ¶ 3; D. Chin Decl. ¶ 3. The couple married in September 2013 in Massachusetts. *Id.* Kari works as a social worker with a local school district. *See* K. Chin Decl. ¶ 2; D. Chin Decl. ¶ 2. Deborah formerly taught elementary school, but now is a stay-at-home mother to their two children, one of whom was born before the couple married. *Id.* Kari gave birth to their son on February 25, 2015, after Florida was ordered to recognize the marriages of same-sex couples. *See* K. Chin Decl. ¶ 4; D. Chin Decl. ¶ 4. When Deborah gave birth to the

couple's son in 2015, however, the Office of Vital Statistics refused to issue a birth certificate with both spouses' names listed.  *See* K. Chin Decl. ¶ 5; D. Chin Decl. ¶ 5.  Instead, the Office of Vital Statistics issued a birth certificate listing Kari as their son's only parent.  *Id.*

Plaintiffs Alma A. Vazquez and Yadira Arenas have been in a committed relationship for three years.  Vazquez Decl. ¶ 3; Arenas Decl. ¶ 3.  The couple married in New York on June 26, 2013.  *Id.*  Alma works as a medical assistant in a pediatric office.  Vazquez Decl. ¶ 2; Arenas Decl. ¶ 2.  Yadira works as a pharmacy technician.  *Id.*  Both are also attending college.  *Id.*  Alma gave birth to their daughter in 2015, after Florida began recognizing marriages of same-sex couples.  Vazquez Decl. ¶ 4; Arenas Decl. ¶ 4.  When Alma gave birth to the couple's daughter on March 31, 2015, the Office of Vital Statistics refused to issue a birth certificate with both spouses listed as their daughter's parents.  Vazquez Decl. ¶ 5; Arenas Decl. ¶ 5.  Instead, Alma was told that in order to get any birth certificate for their child, Alma had to be listed as unmarried on the form.  Vazquez Decl. ¶ 5.

Plaintiff Equality Florida Institute, Inc. is the state's largest civil rights organization dedicated to securing full equality for Florida's lesbian, gay, bisexual, and transgender (LGBT) community.  EQFL Institute Decl. ¶ 2.  Equality Florida Institute's members include many same-sex couples throughout Florida, including married same-sex spouses who have given birth to children during the marriage or who intend to do so.  EQFL Institute Decl. ¶ 4.  Equality Florida Institute brings this action in an associational capacity on behalf of its members who are married same-sex couples in which one spouse has given birth to a child or children in Florida during the marriage but were not provided with a birth certificate listing both spouses as parents, or who intend to for one spouse to give birth to a child or children in the future and wish to receive a birth

certificate listing both spouses as parents, on the same terms and conditions as Defendants issue such birth certificates to married opposite-sex couples.

When one spouse gives birth while married, Florida law requires Defendants to list both spouses as parents on a child's birth certificate. The Florida Vital Statistics Act requires that "[i]f the mother is married at the time of birth, the name of the husband *shall* be entered on the birth certificate as the father of the child, unless paternity has been determined otherwise by a court of competent jurisdiction." Fla. Stat. § 382.013(2)(a) (emphasis added). Because Florida is required to recognize the marriages of same-sex spouses on the "same terms and conditions" as opposite-sex spouses, *see Obergefell*, 135 S. Ct. at 2605, this provision must be applied equally to same-sex spouses. This provision is mandatory and requires the Office of Vital Statistics to provide birth certificates to married couples that include the names of both spouses as parents unless a court has declared that a person other than the mother's spouse is the child's parent. When married opposite-sex couples have children in Florida, and no court has issued a contrary order, Defendants routinely list both spouses on the birth certificate as required by Florida law.

Defendant John H. Armstrong is Surgeon General and Secretary of Health for the State of Florida. In his official capacity, Surgeon General Armstrong directs the Department of Health, which is responsible for "[e]stablish[ing] an Office of Vital Statistics under the direction of a State Registrar for the uniform and efficient registration, compilation, storage, and preservation of all vital records in the state. *See* Fla. Stat. § 382.003(1).

Defendant Kenneth Jones is State Registrar for the State of Florida. In his official capacity, State Registrar Jones is responsible for directing the Office of Vital Statistics to oversee "the uniform and efficient registration, compilation, storage, and preservation of all vital records in the

state," including the issuance and amendment of birth certificates. *See* Fla Stat. §§ 382.003(1); *see also* Fla. Stat §§ 382.013, 382.016.

## LEGAL STANDARD

Plaintiffs can establish each of the four factors that the District Court must consider in determining whether a preliminary injunction should issue: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Siebert v. Allen*, 506 F.3d 1047, 1049 (11th Cir. 2007).

## DISCUSSION

### I.      Plaintiffs Are Likely to Succeed on the Merits.

The Supreme Court in *Obergefell*, 135 S. Ct. 2584, held that States must not only permit same-sex couples to marry, but must also treat their marriages equally, providing married same-sex couples with the same rights and benefits provided to married different-sex couples.  Under *Obergefell*, Defendants' refusal to issue birth certificates listing both parents when a same-sex spouse give birth to a child in Florida violates the Equal Protection and Due Process Clauses of the United States Constitution.  Defendants' refusal is also contrary to the previous rulings of this Court, *see Brenner*, 999 F. Sup. 2d at 1286 (issuing preliminary injunction "sufficient to provide complete relief" to same-sex couples seeking equal access to marriage), *order clarified*, No. 4:14CV107-RH/CAS, 2015 WL 44260 (N.D. Fla. Jan. 1, 2015), and numerous Florida courts, *see, e.g.*, *Dousset v. Florida Atlantic University*, No. 4D14–480, 2015 WL 5440809  (Fla. Dist. Ct. App. Sept. 16, 2015) (reversing denial of in-state tuition for Florida resident based on marriage to same-sex spouse); Order Granting Petitioner's Motion for Declaratory Judgment, *Brassner v.*

*Lade*, No. 13-012058 (Fla Cir. Ct. Dec. 8, 2014) (granting declaratory judgement that Florida's bans on same-sex marriage are void and unenforceable); Order on Amended Petition for Administration, *In re Estate of Bangor*, No. 502014CP001857XXXXMB (Fla. Cir. Ct. Aug. 5, 2014) (ordering non-resident surviving same-sex spouse eligible to serve as a Florida Personal Representative in estate context); Order Granting Plaintiffs' Motion for Summary Judgment, *Pareto v. Ruvin*, No. 14-1661 CA 24, at 2 (Fla. Cir. Ct. Jul. 25, 2014) ("find[ing] that Florida's statutory and constitutional restrictions on same-sex marriage violate the Due Process and Equal Protection Clauses of the United States Constitution"); Order on Plaintiff's Motion for Summary Judgment, *Huntsman v. Heavilin*, No. 2014-CA-305-K (Fla. Cir. Ct. Jul. 17, 2014) (order granting plaintiffs' motion for summary judgment and declaring Florida's bans on same-sex marriage to be void and unenforceable).

Under Florida law, if the Plaintiff couples' marriages were respected, both spouses in the couple would be entitled to be listed as parents on their child's birth certificate.  *See* Fla. Stat. § 382.013(2)(a).  This provision is mandatory and non-discretionary.  *See Sanders v. City of Orlando*, 997 So. 2d 1089, 1095 (Fla. 2008) ("The word 'shall' is mandatory in nature.").  If a woman who gives birth is married, and no court has ruled that a person other than the birth mother's spouse is the child's second legal parent, "the name of the husband *shall be entered* on the birth certificate as the father of the child."  *Id.* (emphasis added).  In the absence of a court order ruling that someone other than the birth mother's spouse is the child's second legal parent, the statute neither requires nor permits the Office of Vial Statistics to investigate the circumstances of the child's conception or to make any determination regarding the child's biological or legal parentage.  To the contrary, in the absence of a contrary court order, the Office of Vital Statistics must list the birth mother and her spouse as the child's parents on the child's birth certificate—

even if another man is known to be the child's biological progenitor. *See, e.g.*, *S.B. v. D.H.*, 736 So.2d 766, 767 (Fla. Dist. Ct. App. 1999) (holding that, in light of the clear mandate in Section 382.013(2)(a), it was legal "error" to place a child's biological father, rather than the birth mother's husband, on the child's birth certificate). This ministerial duty reflects established Florida law that when a married woman gives birth to a child, the husband is presumed to be the child's legal father, regardless of whether he is the biological father, unless and until that presumption is rebutted in a court proceeding, which can be done only in very rare circumstances. *See, e.g.*, *Florida Dep't of Revenue v. Cummings*, 930 So.2d 604, 608 (Fla. 2006) (collecting cases); *C.G. v. J.R.*, 130 So.3d 776, 781 (Fla. Dist. Ct. App. 2014) (affirming denial of paternity action by biological father of child born into an  intact marriage and finding that the "fact that C.G.'s DNA test results established that he was [child's] biological father is 'legally insignificant' for purposes of establishing parental rights"); *I.A. v. H.H.*, 710 So.2d 162 (Fla. Dist. Ct. App. 1998) (holding that a putative biological father has no right to initiate a paternity action concerning the child of a marriage if both the married woman and her spouse object); *S.B.*, 736 So.2d 766 (same); *S.D. v. A.G.*, 764 So.2d 807 (Fla. Dist. Ct. App. 2000) (same). It also reflects established Florida law that married couples who use a sperm donor to have a child are the child's legal parents. Fla. Stat. § 742.11(1).[2]

As this settled legal framework makes clear, like birth certificates in others states, a Florida birth certificate is a legal document, not a medical record. *See, e.g.*, *Henry v. Himes*, 14 F. Supp. 3d 1036, 1052 (S.D. Ohio 2014) ("An Ohio birth certificate is a legal document, not a medical

---

[2] Section 382.013(2)(a) applies only to spouses who give birth. Married couples who have children through adoption or surrogacy—including many male married couples—must obtain birth certificates listing the spouses as the child's legal parents through court orders. Fla. Stat. §§ 382.013(2)(d), 382.015. In sum, nothing in Florida's laws addressing birth certificates and marriage requires or justifies differential treatment of same-sex and different-sex spouses.

record."), *aff'd sub nom Obergefell*, 135 S. Ct. 2584; *cf. Gravatt v. U.S.*, 100 Fed. Cl. 279 (2011)

("Birth certificates are legal documents issued by the state in which a birth occurs. . . ."). As such,

the purpose of a birth certificate is to identify a child's legal parents, not to document the child's

biological progenitors. For example, when a child is adopted, Florida law provides that the Office

of Vital Statistics must issue a new birth certificate listing the adoptive parents as the child's

parents and must place the original certificate under seal. *See* Fla. Stat. § 382.015. The new

certificate is indistinguishable from an original birth certificate: "All names and identifying

information relating to the adoptive parents entered on the new certificate shall refer to the adoptive

parents, but nothing in the certificate shall refer to or designate the parents as being adoptive. All

other items not affected by adoption shall be copied as on the original certificate, including the

date of registration and filing." *Id.* § 382.015(1)(a).

Consistent with this law, the Office of Vital Statistics already routinely issues birth

certificates listing both same-sex parents when a child is adopted by a same-sex couple. As is true

of all new birth certificates issued to adopted children, these birth certificates are indistinguishable

from an original birth certificate and list the same-sex adopted parents as the child's legal parents

*from the time of the child's birth.* There is no legitimate reason the Office of Vital Statistics cannot

use the same, already-existing birth certificate forms to issue original birth certificates listing both

same-sex parents when a birth mother is married to another woman.

Moreover, in addition to adoption, there are many other circumstances under Florida law

in which the persons listed as a child's legal parents on the child's birth certificate are not the

child's biological progenitors. For example, as noted above, Florida law provides that when a

child is born to a married couple using donated sperm, the mother's spouse—not the sperm

donor—is the child's legal parent, *see* Fla. Stat. § 742.11(1), and, under Section 382.013(2)(a), is

11

listed as such on the child's original birth certificate.  Similarly, under settled Florida law, if a child is born to a married different-sex couple, the husband must be placed and remain on the birth certificate unless and until a court determines otherwise, even if there is proof that he is not the biological father.  *S.B.*, 736 So. 2d 766.

These established legal rules must be applied equally to married same-sex spouses and their children.  *Obergefell* made clear that States not only must permit same-sex couples to marry, but also must extend all of the benefits provided by marriage to those couples on equal terms with opposite-sex couples.  135 S. Ct. 2584.  The Supreme Court expressly declined to require same-sex couples to seek equal protection incrementally or to challenge their exclusion from particular marital rights and protections on a case-by-case basis:  "Were the Court to stay its hand to allow slower, *case-by-case determination of the required availability of specific public benefits* to same-sex couples, it still would deny gays and lesbians many rights and responsibilities intertwined with marriage."  *Id.* at 2606 (emphasis added).  Defendants' refusal to apply the vitally  important spousal protection conferred by Section 382.013(2)(a) disregards this clear holding by excluding same-sex couples from the rights and responsibilities of "civil marriage on the same terms and conditions as opposite-sex couples."  *Id.* at 2605.

Moreover, in both *Obergefell* and *United States v. Windsor*, the U.S. Supreme Court recognized that gaining parental recognition based on marriage is a vitally important marital right—and one that goes to the heart of the equal dignity and protection that must be extended to married same-sex couples and their families.  *Obergefell*, 135 S. Ct. at 2600; *Windsor*, 133 S. Ct. at 2625-96.   There is no legitimate reason for the State of Florida to withhold these vital protections from married same-sex couples or to refuse to comply with the mandatory and purely

ministerial duty to list both spouses as parents on a child's birth certificate when a married woman gives birth to a child.

Indeed, in *Obergefell*, the Supreme Court affirmed a district court decision that ordered state officials to provide married same-sex parents with birth certificates listing both spouses, *see Henry*, 14 F. Supp. 3d 1036, and also expressly identified birth certificates as examples of marital protections that must be provided equally to married same-sex couples. *Obergefell*, 135 S. Ct. at 2601. As the Court explained, legally protected "aspects of marital status include: taxation; inheritance and property rights; rules of intestate succession; spousal privilege in the law of evidence; hospital access; medical decisonmaking authority; adoption rights; the rights and benefits of survivors; *birth and death certificates*; professional ethics rules; campaign finance restrictions; workers' compensation benefits; health insurance; and child custody, support, and visitation rules." *Id.* (emphasis added).

Moreover, the Court's decision repeatedly stressed the constitutional imperative of ensuring that the children of same-sex parents have the same rights, protections, and security as the children of opposite-sex parents. The Court held that by depriving those children of "the recognition, stability, and predictability marriage offers," "[t]he marriage laws at issue here . . . harm and humiliate the children of same-sex couples." *Id.* at 2600-01. As a result, "[s]ame-sex couples are consigned to an instability many opposite-sex couples would deem intolerable in their own lives." *Id.* at 2601.

Under Florida law, children born to married parents have a statutory right to the issuance of a birth certificate listing both parents regardless of the circumstances of their birth, so long as a court has not determined that someone other than the birth mother's spouse is the child's other legal parent. Fla. Stat. § 382.013. By applying that protection only to children born to opposite-

13

sex married parents, the Department is denying married same-sex couples and their children a right "intertwined with marriage."  *Id.* at 2606.

The use of gendered terms such as "husband" in Section 382.013 does not alter this conclusion.  *Obergefell* holds that states may not, consistent with the Fourteenth Amendment, provide rights, obligations, conditions, or benefits of marriage that differ depending on the sex of the spouses.  135 S. Ct. 2584.  Just as *Obergefell* requires the issuance of marriage licenses to same-sex couples notwithstanding the use of gendered terms such as "husband" and "wife" or "man" and "woman" in state laws concerning marriage licenses, so also it requires Florida to provide married same-sex couples and their children with the same rights and protections provided to married opposite-sex couples and their children, notwithstanding the use of gendered language in Section 382.013.  As *Obergefell* makes clear, any time the use of a gendered term in state law would result in the denial of equal marital benefits to same-sex couples, the gendered restriction has already been held to be unconstitutional, and continuing to apply it violates the Supreme Court's ruling.[3]

Were that not the case, *Obergefell*'s mandate of equality for married same-sex couples and their families would be hollow, as many state law protections related to marriage use gendered terms.  For example, if gendered terms such as "husband" and "wife" may not be applied to same-sex spouses, then married same-sex couples in Florida would be excluded from critical legal protections, including, among others: the spousal privilege, Fla. Stat. § 90.504 (protecting "communications which were intended to be made in confidence between the spouses while they

---

[3] Moreover, in addition to the constitutional requirement that these statutes be applied equally to same-sex spouses, the Florida statutes themselves provide that "[i]n construing these statutes and each and every word, phrase, or part hereof, where the context will permit: . . . Gender-specific language includes the other gender and neuter."  Fla. Stat. § 1.01(2).

were husband and wife”); many laws protecting the property rights of married couples, *see, e.g.* *id.* § 689.115    (referring to “[a]ny mortgage . . . made to two persons who are husband and wife”); laws protecting the property rights of divorced spouses, *see*, *e.g*., *id.* § 736.1105 (providing for the revocation upon divorce of a revocable trust “executed by a husband or wife as settlor prior to annulment of the marriage’) laws protecting spouses in tort actions, *see*, *e.g*., *id.* § 46.031 (referring to “any action brought by a husband and his wife”); protections for children born to married couples through assisted reproduction, *see, .e.g., id.* § 742.11 (providing that such children are “irrebuttably presumed to be the child[ren] of the husband and wife”); the right to adopt jointly as a married couple, *id.* § 63.042(2)(a) (providing that “a husband and wife jointly” may adopt); and protections against marriage by fraud, duress or undue influence, *id.* § 732.805 (referring to voluntary cohabitation “as husband and wife”).

Excluding married same-sex couples from these protections would relegate them to a “second-tier” status—the very injury that the Supreme Court in both *Windsor* and *Obergefell* held to be constitutionally impermissible.  *See Windsor*, 133 S. Ct. at 2694 (holding that the federal Defense of Marriage Act impermissibly placed married same-sex couples “in an unstable position of being in a second-tier marriage”); *Obergefell*, 135 S. Ct. at 2604 (holding that same-sex couples may not be “denied all the benefits afforded to opposite-sex couples”).  *Obergefell* requires that Florida and other states must apply their marriage laws equally to same-sex spouses, even where particular statutes use gendered terms.

In light of *Obergefell*, Florida’s obligation to cease enforcing the provisions of its laws that treat opposite-sex and same-sex married couples differently is plain.  Other states across the country are complying with this mandate and issuing birth certificates to children born to married same-sex parents that list both parents, just as they do for children born to married opposite-sex

parents. Florida is constitutionally required to do the same, as other federal courts have recognized. *See, e.g.*, *Henry*, 14 F. Supp. 3d at 1052 ("Without a permanent injunction and declaratory relief, the affected same-sex couples and their children would have to continue to navigate life without the birth certificates that pave the way through numerous transactions, large and small.") (granting permanent injunction and declaratory relief requiring issuance of birth certificates for plaintiffs' children identifying both of the children's married same-sex parents), *aff'd sub nom Obergefell v. Hodges*, 135 S. Ct. 2584; Order, *De Leon v. Abbott*, SA-13-CA-00982-OLG (Aug. 11, 2015) (ECF No. 113) ("[T]he Court ORDERS Defendants to submit an advisory to the Court, no later than Monday August 24, 2015: (1) notifying the Court they have created, issued, and implemented policy guidelines recognizing same-sex marriage in death and birth certificates issued in the State of Texas, and (2) assuring the Court that the Department of State Health Services has granted all pending applications for death and birth certificates involving same-sex couples, assuming the applications are otherwise complete and qualify for approval."); *Roe v. Patton*, No. 2:15–cv–00253–DB, 2015 WL 4476734, at *1 (D. Utah July 22, 2015) (granting preliminary injunction requiring issuance of birth certificates to same-sex spouses on same terms and conditions as opposite-sex spouses). Similarly, the Iowa Supreme Court held that its prior decision mandating marriage equality based on state constitutional principles also required the issuance of birth certificates listing a birth mother's same-sex spouse, despite the fact that the statute contained gendered language similar to Florida's. *See, e.g.*, *Gartner v. Iowa Dept. of Public Health*, 830 N.W.2d 335, 341 (Iowa 2013); *compare* Iowa Code Ann. § 144.13(2) *with* Fla. Stat. § 382.013(2)(a).

## II.     Plaintiffs Will Suffer Irreparable Harm Absent an Injunction.

Plaintiffs and their children suffer irreparable harms from the Office of Vital Statistics's unconstitutional refusal to treat their marriages equally to the marriages of different-sex couples. Being denied a birth certificate that lists both of a child's parents is stigmatizing and humiliating and subjects Plaintiffs' families to constitutionally intolerable risks and harms.  *See* K. Chin Decl. ¶¶ 5, 6; D. Chin Decl. ¶¶ 5, 6; Vazquez Decl. ¶¶ 5, 6; Arenas Decl. ¶¶ 5, 6.  Under *Obergefell*, the Plaintiff couples' right to marry includes all of the related rights, responsibilities, and incidents of marriage, including the right to a birth certificate listing the birth mother's spouse as a parent of the couple's child.  Defendants' refusal to issue equal birth certificates to Plaintiffs denies their marriages recognition and "tells those couples, and all the world" that their marriages are "second-tier." *Windsor*, 133 S. Ct. at 2694.  It "disparage[s] and demean[s] the dignity of [these] couples in the eyes of the State and the wider community," treating them as having lesser value than other families and as being unworthy of legal recognition and support.  *Obergefell v. Wymyslo*, 962 F. Supp. 2d 968, 995 (S.D. Ohio 2013); *aff'd sub nom Obergefell v. Hodges*, 135 S. Ct. 2584.  Plaintiff Alma Vazquez describes how "deeply humiliated and distressed" she was by the state's refusal to identify her wife Yadira Arenas on their daughter's birth certificate: "We want our daughter, and any people with whom she comes in contact to know that we are a family and recognized and protected by the state of Florida."  Vazquez Decl. at ¶¶ 5, 8.

As the Plaintiff couples' children grow, Defendants' actions will make it "difficult for [them] to understand the integrity and closeness of their own family and its concord with other families in their community and in their daily lives." *Windsor*, 133 S. Ct. at 2694.  In short, Defendants have told the Plaintiff couples and their children that they do not have real families. *See* K. Chin Decl. ¶¶ 8; D. Chin Decl. ¶ 8; Vazquez Decl. ¶ 8; Arenas Decl. ¶ 8.  Plaintiff Deborah

Chin, who stays home so that she can be a full-time parent to the Chin's two children,   D. Chin Decl. at ¶ 2, says: "Every day, we are both parents to our son, but his birth certificate does not reflect that," and does not identify the mother who cares for him every day as his parent, *id.* at ¶ 6. This discriminatory treatment of married same-sex couples' familial relationships irreparably damages them and their children by facilitating and encouraging public and private discrimination, by stripping them of privacy and dignity, and by stigmatizing their relationships and families. *Windsor*, 133 S. Ct. at 2695-96; *Obergefell,* 135 S. Ct. at 2604.

Defendants' refusal to issue equal birth certificates to same-sex spouses who give birth in Florida causes other irreparable harms as well.  *See* K. Chin Decl. ¶ 7; D. Chin Decl. ¶ 7; Vazquez Decl. ¶ 7; Arenas Decl. ¶ 7.  Birth certificates are vitally important documents.  As the district court in *Henry v. Himes* noted:  "Identification on the child's birth certificate . . . is . . . the only common governmentally-conferred, uniformly recognized, readily-accepted record that establishes identity, parentage, and citizenship, and it is required in an array of legal contexts."  14 F. Supp. 3d at 1050.  "The birth certificate can be critical to registering the child in school; determining the parents' (and child's) right to make medical decisions at critical moments; obtaining a social security card for the child; obtaining social security survivor benefits for the child in the event of a parent's death; establishing a legal parent-child relationship for inheritance purposes in the event of a parent's death; claiming the child as a dependent for purposes of federal income taxes; and obtaining a passport for the child and traveling internationally."  *Id.* (internal citations omitted).

These concerns are equally compelling in Florida.  As the Florida Supreme Court has recognized, being listed as a parent on a child's birth certificate has "significant practical and legal implications."  *Florida Dep't of Revenue v. Cummings*, 930 So. 2d 604, 608 (Fla. 2006) (citing

Florida cases that considered birth certificates in determining whether a child is a survivor in a wrongful death suit and whether a person is a parent under a kidnapping statute). Defendants' policy makes it difficult or impossible for the same-sex spouse of a woman who gives birth in Florida to be recognized as a parent in a wide array of circumstances, including enrolling a child in school, Fla. Stat. § 1003.21(4), daycare, Fla. Stat. § 1002.53(4)(b), and many extracurricular activities; obtaining a passport for a child and traveling with a child internationally, *Passports for Minors Under 16*, United States Department of State, http://travel.state.gov/content/passports/english/passports/under-16.html (last visited Oct. 15, 2015); obtaining a Social Security card for a child, *Learn What Documents You Need To Get A Social Security Card*, Social Security Administration, http://www.ssa.gov/ssnumber/ss5doc.htm (last visited Oct. 15, 2015); making medical decisions for a child; and applying for Social Security survivor benefits for a child in the event of a parent's death, *Benefits for Children*, Social Security Administration, http://www.ssa.gov/pubs/EN-05-10085.pdf (last visited Oct. 15, 2015).

In some instances, the same-sex spouse of a birth mother may be able to demonstrate her legal parentage of the couple's child through other means; however, even where doing so is possible, the need to take extraordinary steps to explain or establish a parental relationship imposes an unconstitutional burden on the fundamental right to marry, invades the privacy of married same-sex couples' families, and exposes them to irreparable stigma, humiliation, and discrimination. These burdens deprive these married couples and their children of the very security and protection that the protections given to married parents under Florida law are designed to secure. *Obergefell*, 135 S. Ct. at 2600-01; *Windsor*, 133 S. Ct. at 2694-95. Perhaps most starkly, both for the Plaintiff couples and for the members of organizational Plaintiff Equality Florida Institute who are married same-sex couples in which one of the spouses has given birth or intends to do so in the future,

Defendants' unconstitutional policy exposes these families to the risk that if the birth mother dies, the child will have no living parent listed on his or her birth certificate, and the surviving parent's ability to make decisions and care for the child may be severely impaired.

In similar cases, other federal courts have held that a state's refusal to issue equal birth certificates to children born to same-sex spouses inflicts irreparable harm. *See, e.g.*, *Henry*, 14 F. Supp. 3d at 1060, *aff'd sub nom Obergefell v. Hodges*, 135 S. Ct. 2584 (state's refusal to issue birth certificates reflecting both same-sex spouses as parents causes plaintiffs to "needlessly suffer harmful delays, bureaucratic complications, increased costs, embarrassment, invasions of privacy, and disrespect" that constitute "irreparable harm"); *Tanco v. Haslam*, 7 F. Supp. 3d 759, 770 (M.D. Tenn. 2014), *aff'd sub nom Obergefell v. Hodges*, 135 S. Ct. 2584 (finding that "an imminent risk of potential harm to [two plaintiff couples'] children during their developing years from the stigmatization and denigration of their family relationship" constituted irreparable harm); *cf. Brenner*, 999 F. Supp. 2d 1278 (holding that the dignitary injury inflicted by Florida's denial of a death certificate listing a same-sex spouse constituted irreparable harm).

In sum, Defendants' discriminatory denial of equal birth certificates to Plaintiffs and their children pursuant to Section 382.013(2)(a) violates Plaintiffs' fundamental right to marry and to have their marriages treated equally and denies these families the privacy, dignity, legitimacy, security, support, and protections available to similarly-situated married different-sex parents and their children. There is no justification, let alone a constitutionally adequate one, for imposing these irreparable harms on the Plaintiffs' families.

## III.   The Injury to Plaintiffs Outweighs Any Harm to Defendants, and the Public Interest Favors Granting an Injunction.

The balance of harms strongly favors the Plaintiffs. The Plaintiffs suffer daily harm, stigma, and humiliation from the violation of their fundamental constitutional right to marry and

to have their marriages treated equally. The Defendants, by contrast, will not suffer any harm at all by respecting Plaintiffs' marriages and treating same-sex and different-sex spouses equally.

Moreover, to the extent the Defendants suggest that they cannot comply with the constitutional guarantees of due process and equal protection in their treatment of married same-sex couples because they purportedly must undergo a "rulemaking process" to implement the Supreme Court's ruling, they are wrong.  No regulatory action is needed to enforce Section 382.013(2)(a) in a constitutional manner that treats all families equally.  Florida Statute Section 382.003(7) expressly empowers the Department of Public Health to "[a]pprove all forms used in registering, recording, certifying, and preserving vital records."  Defendants are already using gender-neutral birth certificate forms for children adopted by same-sex couples.  Defendants offer no reason why they cannot immediately begin using those same forms for children born to married same-sex couples, as the law requires them to do.  Defendants have been under an order from this Court to cease enforcement of Florida's marriage ban since the stay in *Brenner* was lifted in January, and the Supreme Court's decision in *Obergefell* has been in effect for over three months. Defendants must comply with those orders *now,* not at some undefined future point in time.

An injunction is in the public interest because "it is always in the public interest to prevent the violation of a party's constitutional rights."  *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012). In this case, moreover, an injunction also benefits the public by ensuring the accuracy and integrity of the state's vital records.  Defendants' policy has the effect of requiring them to create public records that they know to be false and inaccurate by listing birth mothers who are married to same-sex spouses as unmarried, and creating birth certificates for children that list only one of their legal parents.  It is in the interest of the public and of these families for this Court to require Defendants to comply with the federal Constitution now.

IV.     **Plaintiffs Should Not Be Required to Post a Bond.**

This Court has the discretion to issue a preliminary injunction without requiring Plaintiffs to post bond.  *See BellSouth Telecommc'ns, Inc. v. MCIMetro Access Transmission Serv., LLC*, 425 F.3d 964, 971 (11th Cir. 2005) ("[T]he court may elect to require no security at all.").  Exercise of that discretion is particularly appropriate where, as here, issues of public concern or important federal rights are involved.  *See Complete Angler, LLC v. City of Clearwater, Fla.*, 607 F. Supp. 2d 1326, 1335-36 (M.D. Fla. 2009) ("Waiving the bond requirement is particularly appropriate where a plaintiff alleges the infringement of a fundamental constitutional right."); *Broward Coal. of Condos., Homeowners Ass'ns & Cmty. Orgs. Inc. v. Browning*, No. 4:08cv445-SPM/WCS, 2008 WL 4791004, at *15 (N.D. Fla. Oct. 29, 2008) (same).  Accordingly, if this Court enters a preliminary injunction, no bond should be required.

## CONCLUSION

For the reasons set forth above, Plaintiffs request that the Court issue a preliminary injunction: (1) Declaring that Defendants' refusal to apply Section 382.013(2)(a) equally to same-sex spouses who give birth to children in Florida violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution; (2) enjoining Defendants, their agents, servants, employees, attorneys, and all persons in active concert and participation with Defendants from enforcing Florida's unconstitutional ban on marriage by same-sex couples by refusing to apply Section 382.013(2)(a) or any other statutes or regulations regarding birth certificates and marriage equally to same-sex spouses who give birth to children in Florida; and (3) requiring Defendants to issue corrected birth certificates listing both spouses as parents pursuant to Section 382.013(2)(a) to the Plaintiff couples and, upon request, to other married same-sex couples in which one of the spouses gave birth to a child in Florida during their marriage and

who were not provided with a birth certificate listing both parents as required by Section 382.013(2)(a), without charging such couples any fees that would otherwise apply to issuance of a corrected birth certificate.


Dated: October 16, 2015                         Respectfully Submitted,

                                                /s/ Catherine P. Sakimura _____

                                                Catherine P. Sakimura (Cal. Bar No. 246463)
                                                Shannon P. Minter (Cal. Bar No. 168907)
                                                Christopher F. Stoll (Cal. Bar No. 179046)*
                                                Amy Whelan (Cal. Bar No. 215675)*
                                                National Center for Lesbian Rights
                                                870 Market Street, Suite 370
                                                San Francisco, California 94102
                                                Telephone: (415) 392-6257
                                                Facsimile: (415) 392-8442
                                                Email: SMinter@nclrights.org

                                                *Admission to N.D. Fla. forthcoming

                                                Mary B. Meeks (Fla. Bar No. 769533)
                                                Mary Meeks, P.A.
                                                P.O. Box 536758
                                                Orlando, Florida 32853
                                                Telephone: (407) 362-7879
                                                Email: marybmeeks@aol.com

                                                Elizabeth Schwartz (Fla. Bar No. 114855)*
                                                ELIZABETH F. SCHWARTZ, PA
                                                690 Lincoln Road, Suite 304
                                                Miami Beach, FL 33139
                                                Telephone: (305) 674-9222
                                                Facsimile: (305) 674-9002
                                                E-mail: eschwartz@sobelaw.com

                                                COUNSEL FOR PLAINTIFFS

23

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 16, 2015, I electronically filed this document with the Clerk of Court using CM/ECF, which automatically services all counsel of record via electronic transmission of Notices of electronic Filing generated by CM/ECF.

/s/ Catherine P. Sakimura _____
Catherine P. Sakimura

24